Booth, Chief -Justice,
delivered the opinion of the court.
This is a suit to recover $17,648.40 and interest thereon, the amount of an alleged illegal tax exaction by the Commissioner of Internal Revenue. The plaintiff, an Illinois corporation, operated a distillery and bonded warehouse at Peoria, Illinois. In the months of June, July, August, and September, 1917, it placed in bond a large quantity of alcohol, the same being then gauged as to quantity. In October, 1920, plaintiff received a permit to sell, and the United States Industrial Alcohol Company a permit to purchase, what totaled in the end 1,500 barrels of plaintiff’s alcohol for the purpose of denaturation. Upon the withdrawal of the alcohol by the plaintiff it was regauged, with the result that actual evaporation and shrinkage exceeded the arbitrary quantity of allowable loss fixed in the Carlisle Act (28 Stat. 509) amended (30 Stat. 1349), by 2,777.9 gallons. The commissioner levied and collected a tax of $2.20 per gallon on this excess quantity. Plaintiff filed a refund claim, insisting upon the illegality of the tax. The commissioner at first allowed the refund, but subsequently in May, 1924, reassessed and collected the tax with interest and penalties. The amount of the tax paid is not contested, nor is there room for disputation as to the facts. The legality of the tax is not' challenged if the Carlisle Act is applicable. A transaction similar in most respects, involving all but one of the contentions herein, took place in September, 1922, when 560 barrels were withdrawn by the plaintiff and sold to the same company, disclosing an excess loss of 4,716.3 gallons over the loss allowable under the Carlisle Act.
*275 Plaintiff rests its case upon section 14, Title III, of the national prohibition act (41 Stat. 321), which provides:
“YThenever any alcohol is lost by evaporation or other shrinkage, leakage, casualty, or unavoidable cause during distillation, redistillation, denaturation, withdrawal, piping, shipment, warehousing, storage, packing, transfer, or recovery of any such alcohol the commissioner may remit or refund any tax incurred under existing law upon such alcohol, provided he is satisfied that the alcohol has not been diverted to any illegal use: Provided, also, That such allowance shall not be granted if the person claiming same is indemnified against such loss by a valid claim of insurance.”
The Carlisle Act, passed August 27, 1894, provides in terms for the gauging and regauging of distilled spirits placed by distillers in bonded warehouses. It sets up the method of gauging, the time in which losses may be claimed, and fixes the quantity to be allowed as a loss under the conditions of the statute. Plaintiff received a tax exemption under this statute from the commissioner. What is now claimed is an exemption from tax of the actual loss from evaporation, leakage, etc., ascertained by the regauge upon withdrawal under the terms of the foregoing prohibition act.
We do not think we need indulge in extended argument in reaching a conclusion adverse to the plaintiff’s contention. The plantiff was a preprohibition distiller, lawfully engaged in distilling ardent spirits for beverage purposes. It had in storage in its bonded warehouse,' when the eighteenth amendment came into force, the quantity of alcohol involved in this suit. Subsequent to the adoption of the amendment and the passage of the prohibition act this quantity of grain alcohol could only be sold in the manner prescribed by the statute. This the plaintiff was permitted to do. The plaintiff was not and never has been engaged introducing industrial alcohol. It has never sought a permit or license so to do. The section of the prohibition act upon which reliance is had is not directed toward the disposition of grain alcohol distilled prior to its effective date for purposes other than industrial. Section 14 when considered in pcm, materia with *276 the statute as a whole seems to be clearly but a part of the general scheme of regulating the production and sale of industrial alcohol, and has no relation to the disposition of the vast quantities of alcohol distilled under then existing law several years prior to prohibition. This we think is obvious from the provisions of section 6 pointing out a way in which grain alcohol, in being prior to the statute, may under regulations be converted into industrial alcohol and sold. The plaintiff did not follow this course. It sold existing alcohol to another to be so converted, and we are at a loss how claim may be made under the prohibition act when plaintiff did no more than supply an industrial-alcohol plant with alcohol to be so converted. Plaintiff at no time operated under the national prohibition act in this respect. Section 6 in conjunction with section 9 emphasizes the force of this construction and leaves, we think, little if any doubt that the commissioner’s construction of the laws was correct. As the defendant’s brief discloses, the loss by way of evaporation, shrinkage, etc., occurred in its major portion prior to the passage of the prohibition law and had it not been for prohibitory legislation would have been ascertainable under the Carlisle Act. When prohibition came legislation was essential, both with respect to alcohol on hand and as to its future production and sale for industrial purposes. Congress provided for both contingencies; existing supplies might under permit and regulations be sold or converted for especial purposes, and the future demand as supplied under the sections of the prohibition law (as disclosed in its various sections). In so legislating, we may not ascribe to Congress an intent to exempt from taxation alcohol produced prior to the passage of the act, the taxing of which was fixed in amount and quantity at the time of its distillation. The plaintiff did not-produce or sell industrial alcohol, nor was its loss occasioned during distillation, redistillation, dena-turation, etc., as the section provides. The plaintiff did not denature its product at all. The plaintiff seems to us to be in exactly the same situation as a distiller of distilled spirits; he may under regulations and permits sell his distilled spirits, but in so doing he may not escape the revenue laws applicable to a distiller of distilled spirits when they were *277 distilled. The alcohol mentioned in section 14 made tax free is the industrial alcohol to be used for industrial purposes, and can not claim the exemption until it becomes industrial alcohol under the statute.
The petition will be dismissed. It is so ordered. .
SiNNOtt, Judge; Moss, Judge; and Geaham, Judge, concur.
GREEN, Judge, dissents.